153 So.2d 120 (1963)
Sherman FONTENOT et al., Plaintiff-Appellee,
v.
Joseph C. HUDAK, Defendant-Appellant.
No. 846.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1963.
*121 Hall, Raggio & Farrar, by Edgar F. Barnett, Lake Charles, for defendant-appellant.
Plauche & Stockwell, by Oliver P. Stockwell, Lake Charles, for plaintiff-appellee.
Before TATE, FRUGE and SAVOY, JJ.
SAVOY, Judge.
Defendant appealed from the judgment of the district court awarding plaintiffs money judgments in a tort action. The trial judge has fully analyzed the facts in the instant case, and we adopt his summary of same as our own:
"This is a suit for property damage resulting from a collision at the intersection of Hodges and Sixth Streets in the City of Lake Charles, Louisiana, that occurred about three o'clock P.M. on March 25, 1961. The plaintiff, Sherman Fontenot, was driving his 1960 Buick sedan in a northerly direction on Hodges Street, and the defendant, Joseph C. Hudak, was driving his 1959 Oldsmobile sedan in a westerly direction on Sixth Street. It was stipulated that, if plaintiffs were entitled to recover, the recovery of Mr. Fontenot should be in the sum of Fifty ($50.00) Dollars and the recovery of his insurer, State Farm Mutual Automobile Insurance Company, should be in the sum of Eight Hundred Thirty-five and 12/100 ($835.12) Dollars, being the total amount of damages to the vehicle owned and driven by Mr. Fontenot. It was further stipulated that there had been a stop sign on Sixth Street, at its intersection with Hodges Street, directing the traffic on Sixth Street to come to a stop before entering the intersection, but that the stop sign was not in place at the time of the accident involved in this case. The stop sign had been previously removed or knocked down, and after the collision it was found lying on the ground in the vicinity of the place where it had previously been erected. The only testimony in the case was that given by the driver of each vehicle.
"Mr. Fontenot testified that he was traveling in a northerly direction on Hodges Street at a speed of approximately twentyfive miles per hour, and that he observed the other vehicle approaching the intersection, traveling west on Sixth Street. Mr. Fontenot testified that he was familiar with the intersection, having driven a route for milk delivery for a period of several years on Sixth Street, although he did not know that the sign had been knocked down prior to this particular collision. He testified that he expected that Mr. Hudak would stop his vehicle in obedience to the stop sign and, when Mr. Hudak entered the intersection without stopping, he (Mr. Fontenot) turned to the left in an effort to avoid the accident, accelerating the speed of his vehicle in that effort. His vehicle was *122 struck about the right middle, causing the damages referred to above. Mr. Fontenot stated that he was about four car lengths from the intersection when he first observed Mr. Hudak's vehicle approaching the intersection on Sixth Street. He estimated the speed of the Hudak vehicle at approximately twenty-five miles per hour.
"Mr. Hudak testified that he was traveling in a westerly direction on Sixth Street at a speed of approximately twenty miles per hour. He described the intersection on his approach thereto, mentioning that his vision to the left was somewhat obscured by a building at the southeast corner of the intersection. He stated that he was looking for, but did not see, any stop sign and had a conversation with his wife about who might have the right-of-way at the intersection. On approaching the intersection, he stated he looked straight ahead, then looked to the right and saw no traffic approaching and that, before he looked to the left, his wife yelled, `Here comes a car', and that he applied his brakes but it was too late to avoid the collision. Although somewhat in contradiction of his previous statement, Mr. Hudak stated that he was about twenty yards away from the intersection when he looked to the left, but he did not see the Fontenot vehicle until just about the moment of the impact. He further testified that he increased his speed slightly just before entering the intersection and applied his brakes about one car length distance from the point of entering the intersection. Mr. Hudak testified that the collision occurred in the northeast quarter of the intersection of the two streets."
In his reasons for judgment the trial judge found for the plaintiff for the reason that the driver of the Fontenot vehicle had pre-empted the intersection.
Counsel for appellant contends that the pre-emption rule is not applicable to the instant case because of the decision in Montalbano v. Hall, (La.App., 2nd Cir., 1958), 108 So.2d 16, wherein the court stated:
"* * * we think by far the better rule, and one which is now completely accepted, clearly requires the interpretation of preemption to be the entrance of an intersection with the normal and reasonable opportunity and expectation of clearing such intersection without obstruction to the crossing thereof by other vehicles; * * *."
In view of the fact that the cars involved in the accident in the instant case entered the intersection at approximately the same time, this Court prefers to base its decision on a ground other than that of preemption.
Counsel for appellant, Joseph C. Hudak, contends that since Hudak did not know of the prior posting of the stop sign on Sixth Street; since at the time of the accident the sign was lying on the ground; and, since Hudak was approaching from the right, he had the right-of-way under the provisions of LSA-R.S. 32:237, Subdivision A.
On the other hand, counsel for Sherman Fontenot urges that the entering of the intersection by Fontenot, with his knowledge of the fact that there had been a stop sign on Sixth Street at the intersection, constituted no negligence on his part, as he was entitled to rely upon the fact that the Hudak vehicle would stop and respect the right-of-way of the vehicle traveling north on Hodges Street.
Had the stop sign been standing at the time of the accident in the instant case, clearly plaintiff would be entitled to recover under the decision in the case of Martin v. Barros, (La.App., 3 Cir., 1962), 142 So.2d 171, wherein the Court stated:
"In Hernandez v. State Farm Mutual Automobile Insurance Company, supra, [La.App., 128 So.2d 833] we said:
"`As we have already stated, the evidence establishes that plaintiff was *123 driving his car at a speed of from 15 to 25 miles per hour as it approached the intersection. This was a lawful rate of speed. Plaintiff was traveling on a right-of-way thoroughfare and was aware of the existence of a stop sign warning vehicles entering the intersection from Trudeau Street to stop before doing so. Under those circumstances, he was justified in assuming that drivers on the inferior street would obey the law, and, accordingly, he had the right to proceed at a lawful rate of speed without stopping or reducing his speed at each intersection, unless he saw, or should have seen, that the other car was not observing or was not going to observe the law.'"
The general rule of law in a case where a stop sign has been misplaced, improperly removed, destroyed or obliterated is set out in 74 A.L.R.2d at pages 245 and 246, and reads as follows:
"Where the boulevard, through street, or arterial highway has been properly designated and appropriate signs have been erected, it ordinarily has been held that the preferred status of the highway is not lost merely because a stop sign is misplaced, improperly removed, destroyed, or obliterated. But removal of the sign by municipal or state authorities has been held to destroy the preferred status of the arterial highway.
"The rule that a motorist driving on an arterial or perferred road protected by stop signs is entitled to assume that the driver of a vehicle on an intersecting servient street will obey the law and stop or yield the right of way has been held not rendered inapplicable because a stop sign which ordinarily should face the motorist on the side street has been misplaced, destroyed or improperly removed. But the right to rely on the assumption may be lost where the driver on the arterial road is not himself exercising due care while approaching or crossing the intersection, and motorists upon arterial highways will be held liable, of course, for collisions resulting from their failure to exercise due care toward traffic on the intersecting road."
As stated before, Fontenot was familiar with the intersection of Sixth and Hodges Streets. He knew that Hodges Street had the right-of-way because of the erection of stop signs on the east and west side of Sixth Street. Hudak, on the other hand, testified he did not know which of the two above named streets had the right-of-way and stated this fact to his wife who was riding with him in the car at the time of the accident. He also slowed his speed but never did stop. He did not look to his left immediately prior to entering the intersection. The evidence also reveals that both drivers were not driving their respective vehicles at an excessive speed.
Under the circumstances of this case, we are of the opinion that plaintiff was not negligent in crossing the intersection. He knew he had the right-of-way and was driving his car at a reasonable speed, namely 25 miles per hour. He was justified in assuming that Hudak would respect his right-of-way. Hudak, on the other hand, was not certain whether he had the right-of-way, and, in fact, slowed his vehicle somewhat before entering the intersection. He testified that a building to his left partially obstructed his view of traffic traveling north on Hodges Street. He failed to look to the left shortly before entering the intersection, thereby failing to maintain a proper lookout. We are of the opinion that his failure to maintain a proper lookout constitutes negligence on his part which was the proximate cause of the accident.
For the reasons assigned, the judgment of the district court is affirmed. Appellant to pay the costs of this appeal.
Affirmed.